Roll your argument next this morning in Case 10-98, Ashcroft v. al-Kidd. General Katyal. Thank you, Mr. Chief Justice, and may it please the Court. This lawsuit seeks personal money damages against a former Attorney General of the United States for doing his job, allegedly with an improper motive. Yet the Attorney General, like the Federal Prosecutor in Idaho, who sought the material witness warrant at issue in this case, was performing the functions of his office. There are three reasons why the Petitioner should not be personally liable for money damages. The first is because the Prosecutor's Act of seeking the material witness warrant is integrally associated with the judicial process and entitled to absolute immunity. To view it any other way is to expose both line prosecutors and high officials to lawsuits by highly incentivized litigants based on their purportedly bad motives. That is something this Court has manifestly resisted, and for good reason. Because improper motives are easy to allege and hard to disprove, allowing such suits to proceed would result in burdensome litigation and interfere with the ability of prosecutors to do their jobs. The second reason is that the Fourth Amendment was not violated and, therefore, qualified immunity applies. There can be little doubt that the statutory requirements of Section 3144 were met in this case, and equally, there can be little doubt that the subjective motivations of Attorney General Ashcroft or the line prosecutor are thoroughly irrelevant to whether a Fourth Amendment violation exists. This Court has repeatedly rejected subjectivity, explaining that otherwise time-consuming, vexatious, burdensome, and indeed destabilizing discovery and litigation would be the inexorable result. And the third reason, and the easiest reason, is that whatever one thinks the applicable law is, what it should be, it was manifestly not the law in 2003 when the warrant in this case was issued by a neutral judge in Idaho to say. Scalia, can I ask whether your second reason doesn't boil down to saying that it makes very little difference whether Ashcroft is held immune by absolute immunity or by qualified immunity? Once you say that motive is not introducible with regard to the qualified immunity question, and once you say that he's using a witness subpoena and you can't look behind it as to whether he was abusing it for some other purpose, is there any difference between absolute and qualified immunity? Well, I take it there may be a difference. We think the Court should first decide the absolute immunity question, which is the way that this Court has historically handled questions, when there's an absolute immunity question and then a qualified immunity one. I take it that the qualified immunity question in this case is one about whether motivations matter for the Fourth Amendment, whereas the motivation question in the absolute immunity sense, as Respondents say it, is something broader. It's not limited to the Fourth Amendment, per se. Their argument is if the prosecutor has bad motives, essentially, or a certain bad motive, an investigatory or purposeful bad motive to engage in preventive detention that somehow pierces the veil of absolute immunity, that is something this Court has never accepted. Well, I thought the argument rather was that this is not as close to the core of the prosecutorial function as some of the other functions to which we have given absolute immunity. And since it's so dangerous, since there is such potential for abuse, we shouldn't confer absolute immunity on this particular conduct. But I don't understand why, if we agree with you on qualified immunity, there is any difference whatever. Justice Scalia, to be sure, they are now making that argument in this Court that this doesn't fall, this isn't intimately associated with the judicial process. Below, of course, they said the reverse, that material witness warrants were associated with the judicial process, and that the only difference is that here they had a bad motive. So I've talked about the bad motive point. Now, with respect to whether this is intimately associated with the judicial process, these are material witness warrants being sought in connection with an ongoing investigation by a prosecutor. It is quintessentially a prosecutorial function to obtain these warrants, and it has been for hundreds of years. And it's the exercise of the prosecutor's professional judgment, which is something that this Court has looked to. Scalia, was the prosecution already pending when this warrant was issued? Yes, it was. The indictment of Mr. al-Hussein was in February of 2003. The prosecutors learned in March that Mr. al-Kid was about to board a plane and go off to Saudi Arabia for an unspecified length of time. They then acted immediately. They went to the Court and said, we need this warrant to secure this testimony. That is, to me, essentially what prosecutors do, and protected by Imler. To see it any other way is to expose prosecutors to lawsuits. With Mr. al-Kid, was he released after, I understand, he didn't testify at the trial, and there was an acquittal, and then other charges were dropped. Was al-Kid still in custody as a material witness after the trial was over? Justice Ginsburg, he was on commit – he was detained for only a period of 16 days total in 2003. But he was restrained much longer. He had travel restrictions placed upon him until the trial was over and until the government, because after the resolution of Mr. al-Hussein's case, which was acquittal on some charges and a hung conviction – a hung decision on others, the government thought about retrying Mr. al-Hussein, took it very seriously. And 20 days after al-Hussein's verdict by the jury, we reached an agreement with them in writing that Mr. al-Hussein would leave the country and not come back. And in exchange, we weren't going to prosecute him any further. And so immediately, I think quite soon after the jury verdict, the jury – the conditions placed on Mr. al-Kid were lifted. And I should say that the material witness warrant statute laces into it a whole suite of safeguards to prevent against, as Justice Scalia, you pointed out, the potential abuse for the – for material witnesses by prosecutors. I think Congress has set up several different things to prevent that. The first is, in order to get a material witness warrant, the prosecutor needs to show both materiality and impracticability. The second is that there are strict limits placed on the condition of the – on the ability of the prosecutor to detain anyone. Section 3142 says that a detention can only be allowed by a judge if, quote, no condition or combination of conditions will reasonably assure the appearance of the individual. And then there's a formal procedure where they have a right to counsel, they have the right to cross-examine witnesses, to present evidence, to proffer evidence at the hearing, and the like, all to show that they shouldn't continue to be detained. Alitoso, in light of these restrictions, I would like to come back to the question that I understood Justice Scalia to be asking. If the Court were to hold that obtaining a material witness warrant does not violate the Fourth Amendment where the statutory requirements, and in particular, establishing materiality, are met, why would it be necessary for the Court to decide whether there's absolute immunity when a prosecutor seeks a material witness warrant? For two reasons. Number one is I think that's the way this Court has historically gone about it, probably for reasons of constitutional avoidance, to not reach constitutional questions if there's an absolute immunity question. And the second is, here you have a Ninth Circuit decision, Justice Alito, that says that absolute immunity can be pierced by a prosecutor's bad motive. That is something that infects not simply material witness warrant cases, but indeed virtually any case. As we point out and as the dissent below pointed out, that kind of argument could be run by any defendant who says, you didn't intend to actually indict me, or you didn't care about that, you really wanted to flip me to get testimony against some higher-up. And to allow defendants to make those kinds of arguments and to expose line prosecutors and attorneys general to that form of liability is an extremely damaging proposition. With respect to the Fourth Amendment question about whether or not motive applies, I think this Court has quite clearly said in Wren that motive is not – is not something that should be looked to, that the subjective motivations of the prosecutor are not – Ginsburg. But that's after there is probable cause to suspect that criminal activity has occurred. And then once you have probable cause, you say, I'm not going to look behind probable cause. But here, the whole reason for using this material witness statute is that there isn't probable cause to believe that Alkit did anything that violated – there was no violation of the law. So Wren is a different case. Justice Ginsburg, it's certainly different in that respect, but I do think that difference doesn't matter, because I think what Wren and Edmund and the cases we're getting at is, is there some objective, individualized determination by a neutral judge? And here, as I was saying earlier, there is quite clearly that laced into the 3144 statute itself. That is, the judge must find materiality and impracticability of the testimony. And that is a standard performing, I think, a longstanding government function of making sure that testimony, important testimony, is available at trial. So it is not like a situation in which the government, just on their mere say-so, can put – can detain someone on the basis of them saying, well, we think this person has information. I think there are strict standards placed on that. And indeed, Federal Rule of – Federal Rules of Criminal Procedure 46 add standards to it by saying that a prosecutor must report to the judge every 10 days about anyone who is detained and assure no more detention is necessary. And so that's what happens. Scalia I don't see – I don't see how that would make any difference to the – at least to the absolute immunity question. You wouldn't assert that there is absolute immunity if there's a statute such as this, but there is not if there isn't. I mean, either this is core prosecutorial function for which he can't be sued, or it isn't. So what difference does this statute make as far – as far as absolute immunity  Katyal Absolutely, Justice Scalia. I was just answering Justice Ginsburg's question about qualified immunity. I imagine one point about the statute might be that the statute, going all the way back to 1789, do reflect that this is a prosecutorial function to the extent there is any doubt. So, for example, the 1846 statute said that an attorney – excuse me, an attorney of the United States must apply for a material witness. So for us to agree with you on absolute immunity, we would have to believe that even if there were no such statute, and if a prosecutor simply detained somebody as a material witness without any check of an independent magistrate, he would be immune. Katyal I think that is correct, that that is quintessentially what prosecutors do in the exercise of trying to get a trial going. Breyer Suppose – suppose that a prosecutor reads the statute. There must be an affidavit that says this witness is material. And there is irrefutable evidence that the prosecutor said to colleagues and others, I do not intend to try this person ever, no matter what, I just want to ask him questions. In that case, has the statute been violated because he is not material? Katyal Well, if the – if that – I'm not sure. I totally follow. Breyer I'm not saying it's this case. I'm saying it's a hypothetical case. Katyal If the evidence shows that the evidence is not material, then the statute is violated. Breyer And the reason it is not material is because the prosecutor has no intention whatsoever of ever bringing this person as a witness in any trial. Katyal I do think that that would generally mean that materiality would be violated. I could imagine some theoretical consequence. Breyer If materiality is violated, does not – then that prosecutor, since he had no intention of bringing him to trial or of having him as a witness at a trial, that prosecutor would not be immune. Katyal Justice Breyer, let me just make sure that I understand the contours of your hypothetical. I don't think that subjective motivations of the prosecutor go to materiality. So if – Breyer Well, how does it – how does it solve? How does it work? So I think that Congress set up the objective two-part test to decide whether or not an arrest warrant would take place, which is materiality and impracticability. Now, that isn't subjective. That is simply does the person have material information that can be used, that's relevant to the trial. Now, if the person has a – the prosecutor has a subjective intent that says, I'm never going to use this testimony, then I think that that doesn't – that will – that will almost always reflect the fact that materiality just objectively hasn't been met in a given case. But theoretically, I could imagine a circumstance in which the prosecutor has that subjective intent, but yet is material. With respect to that, Congress has a different safeguard at the back end in 3144. And that is the language in 3144 that says a judge in the detention hearing is to inquire as to whether or not the detention is necessary, quote, in the – if there will be a failure of justice if the person is released. Scalia. And you can't look behind that, right? You can't look behind that. If the judge has said it's material, that's the end of it, you have absolute immunity, right? Well, I think that the defense can litigate that and appeal that set of issues, but I don't think it can appeal the judge's determination that it's material. Absolutely. Well, then how can you have absolute immunity? Well, they could, because we're talking about time. At that time, it's issued. Exactly. I see. But it's the time itself, and I think that's an important point, Justice Scalia, with respect to absolute immunity. This Court has often said that it's the crucible of the trial process itself that often is the safeguard against impunity. Well, what if you didn't have – again, what if you didn't have this prescribed judicial process? I take it that the logic of this Court's precedence is that absolute immunity would still apply. And the reason for that is that absolute immunity isn't some rule to just protect prosecutors willy-nilly, it's to protect the public. And as this Court said most recently, unanimously, in the Vandekamp case, that, in quoting Learned Hand, that there is a cost to this. No doubt that certain individuals will be harmed, but the cost of rooting out the bad apples through damages lawsuits is far worse, that it causes prosecutors to flinch in the performance of their duties. Sotomayor, there is a difference between calling a witness at trial and arresting a person. How is it part of the prosecutorial or the trial function to arrest someone? Isn't what's protected absolutely is your use of that person at trial, not your arrest or detention of them? No, I do think it goes quite a bit further than that. I think it goes — and I think Burns v. Reed, in the relevant languages of page 492, I think is relevant because it says that it's pretrial conduct in order to secure the testimony for trial or the like is what is protected as well. That it would be far too narrow to just focus on the trial itself, and that would be the contours of absolute immunity. I think Justice Kennedy's opinion in Buckley is also instructive in this regard, because what that opinion says is that allowing only immunity for the trial would just allow individuals to constantly replead their allegations and focus only on the pretrial conduct and be an end run around absolute immunity. And again, absolute immunity is important, not for the prosecutor for his own sake or her own sake, but because ultimately that is what — that causing damage liability will make prosecutors flinch in the performance of their duties more generally. You don't think there's a reason to make prosecutors flinch against willy-nilly arrest? That's not what I'm alleged — I'm claiming happens here. But if you take the point that you're raising, then prosecutors can, out of spite, out of pure investigative reasoning, out of whatever motive they have, just lock people up. Justice Sotomayor, I don't mean to say at all that making prosecutors flinch is always a bad thing. What I'm referring to is this Court's precedents that say damage is liability on prosecutors is the wrong way to go about it, because the costs are too high compared to the benefits. And there are other ways of dealing with that, from professional discipline, as Malley v. Briggs and Imbler said, to bar actions, to the crucible of the trial process itself, which is a way of dealing with that. Scalia. And the procedures set forth in the statute, I'd say you would add, which you think are not necessary but are there in order to make them flinch in a different way. That is precisely correct. We don't think those are constitutionally compelled, but we do think they provide a very important safeguard. Kennedy. What's your best authority that at common law or the common law tradition, there is absolute immunity for witness warrant, for the issues of witness warrants? I don't think it's come up with respect to public prosecutors, and so our argument here, to the extent the Court reaches that question, and again, it wasn't raised below or in the brief in opposition, but if the Court wanted to reach that question, I think it would be that the argument would derive the same way as the arguments in this Court's post-Imbler cases, which is, as long as it is intimately associated with the judicial function, what the prosecutor is doing, then absolute immunity should extend to that context. Kennedy. Then a second question, quite apart from immunity, just addressing the substantive constitutional issues under the statute. Suppose that the prosecutor has probable cause to indict and try the person for the indictment, but there is a good reason to show that he would be a material witness as to another participant in the crime. Does the government have any duty to proceed with the indictment, or can they just hold the person as a material witness without indicting? I do think that the government — I'm not sure if we have any policy with respect to that, but I think that we — that at least for Fourth Amendment purposes, there wouldn't be a violation if the government held the person for essentially a dual motive. And that is what I understand they have now conceded at page 31 of their brief, which is that in dual motive cases, the government's action is permissible. If there are no other questions, I will close with counsel. Roberts. Thank you, General. Mr. Gillern. Mr. Chief Justice, and may it please the Court. In Dunaway, this Court emphatically reaffirmed the bedrock Fourth Amendment principle that a criminal suspect may not be arrested absent probable cause to believe there has been a law violated. The rule is fundamental to our traditions, is widely viewed as a defining feature of our country, and has been steadfastly protected by this Court for more than two centuries in both good and bad times. The material witness statute represents a dramatic departure to the rule, allowing the arrest of uncharged, innocent, even cooperative people. If a material witness arrest is constitutional, it can only be because its purpose is to secure testimony and not to preventively detain and investigate the witness himself. Scalia, do you acknowledge that it is then constitutional? Your opening comments made me think you don't even acknowledge that it's constitutional then. Justice Scalia, we are not pressing that argument. I would say that, based on the legal historian's brief, there's a strong argument to be made that it is not constitutional with respect at least to cooperative witnesses. The statute the Framers enacted in 1789 would not allow the arrest of any witness unless they came voluntarily before the magistrate and refused even promise to return, not even a surety or a bond was allowed. So we do think there's a strong argument, but we are not pressing that argument. Our argument is that it cannot be used for ulterior purposes. I just want to pick up, if I can, with Justice Breyer's hypothetical that he posed to the government, which is, of course, our hypothetical. The government started out this case throughout the lower courts and in the opening brief saying purpose is wholly irrelevant, this is Wren. Even though Wren is probable cause to believe a law has been violated, this is Wren, purpose is wholly irrelevant. We pose the hypothetical, which we actually think is this case, and it's consistent with our factual allegations, that the sole reason this arrest was made was not to secure testimony, but to preventively detain and investigate someone for whom there was no probable cause of a violation of the law. That is a difficult situation, I think, to reconcile with Wren, I think an impossible situation to reconcile with Wren, or with the text or history of this statute. The government has now come back and trying to have it both ways and said, well, the statute wouldn't actually allow that. But if purpose is truly, as Justice Breyer pointed out, if purpose is truly irrelevant why they want to make the arrest, the government should have answered that would be fine. The only things we need to satisfy are the objective components of materiality and impracticability. Alitoson, is this a realistic hypothetical that you've posed? Now, in order to detain someone under the material witness statute, that person, potential witness, must have material testimony, not just relevant testimony, material testimony, testimony that would be of some importance in a criminal prosecution. So your hypothetical is a situation in which there is a witness and this witness has important testimony that could be used in a pending criminal case, and yet the government has absolutely no interest in calling that person as a witness. How often is that going to arise? Well, Justice Alito, I think, you know, a few points. One is just as an initial matter, the statute has not actually been interpreted to go beyond relevant in the way you're posing it. And interestingly, earlier statutes actually said the testimony needed to be necessary. And so that's actually an important watering down. But putting that aside for the moment, we think that what it did happen in this case, it happened after 9-11, and I think that goes to the crux of our case here. We are not trying to fiddle with the use of the material witness statute in the everyday context, and I think that's the point the Federal Prosecutor's brief is making. What we are saying is simply that the principle has to be that if you do encounter that extreme case, this Court should not bless the situation where it literally can be used as a preventative detention.  Well, the problem, and it's I think the problem that Wren highlighted, is that the allegation can so readily be made in every case under the material witness statute is that this is one of those bad intent cases, and the case has to proceed so that we can prove that. One of the ways we prove that is by asking everybody who's involved in the process, why did you do this, what was your intent? I mean, the whole purpose of Wren is to make sure that kind of stuff doesn't happen. Yes, Mr. Chief Justice, but let me say that I think that I, as I understand Wren, and I obviously don't want to tell the Court about its own cases, but is that it was drawing a conceptual line, that the first point about Wren, and I think the fundamental point was the conceptual point that, as the Wren court put it, only an undiscerning reader would conflate cases in which there was probable cause of a violation of the law with cases in which there wasn't. So I think the Wren court is not saying we wouldn't look at purpose. I think that's the teaching of the special needs cases. Now, to your practical question about, well, why would this be hard to allege, I actually think that this is one of those unique situations which it would be very difficult to allege. Take the government's cases, for example, that they've cited, like Daniels and Betz, the material witness cases. You have witnesses being arrested, not showing up for trial. As the court of appeals made clear in those cases, they were the main witnesses not showing up on the day or the trial or right before trial. It would be virtually impossible for those witnesses to turn around and say the only reason I was arrested was for investigative purposes. And I think that, on top of the fact that this statute is used very rarely, I mean, what we've pointed out is other than in immigration cases, which the person is already subject to custody, there are only a few hundred each year. And again, I think what the green brief is saying by the Federal prosecutors is, look, the settled understanding of this statute among line prosecutors has always been you use it to secure testimony. Maybe there's a windfall in the back of your mind that this person might be a suspect, but you certainly can't use it where you have no intention of using the testimony. I think then the limitations on the statute become meaningless. I mean, take the case of the 1990s. Roberts, so every time the prosecutor elects not to call one of these witnesses for a variety of reasons, you'd have a claim that this wasn't designed to elicit testimony? No, no, we don't think so, Mr. Chief Justice. I think what we've said is that calling the witness or not calling the witness can't be determinative. I think one reason is you wouldn't want to create a perverse incentive to have prosecutors simply call the witness just to cover themselves. So I think you would have to allege much more, and I think that's what we've done. I think there is an entire set of allegations with respect to Mr. Alkaid, and they fit a national pattern. And I would importantly say in the questions presented, the government raised an Iqbal claim as to plausibility only as to a small part of this case which is no longer part of the case, which is, was Mr. Rashcroft involved in the specific statements in this specific affidavit. They did not allege that the allegations of a pretextual policy were implausible. So it is not before this Court, it is not a question presented, and I think it's telling that the government didn't raise it. They are sitting on all the information about what happened after 9-11 as a policy matter, and they did not claim it was implausible. Kennedy, I apologize if I wasn't clear, that what the Court of Appeals showed and what the statistics also show is that roughly 92 percent of the cases are immigration cases, where the person is already subject to custody and there wouldn't be any need to use it in that pretextual way. So what we're talking about is a few hundred percent of the cases are immigration  to use it in that pretextual way. And so we're talking about a few hundred each year throughout the country, and again, when it's used properly, it's going to be virtually impossible to allege something like this. Kennedy, do we have statistics for the States, how many States hold, how many people are held under State material witness statutes? We have looked for those, Justice Kennedy, and we have not been able to find them. What we do know about the States, though, is that more than 30 of the States have is they follow what the Framers did in 1789, which is to say the witness has to be given an opportunity to comply, and that's what the Framers did. You have to ask the witness if they're continuing to comply. If they won't, or you have to make a showing of why it's impossible to ask them. So I think in many States it won't be a problem, but I think actually, you know, the State issue is an important one because what the Federal government is arguing here is, of course, well, our prosecutors are very well supervised. Well, that doesn't take into account if there's a deliberate attempt to misuse it. But I also think what we're looking at are States, local counties, cities where there may not be the resources necessary to put checks on. And what the government is asking is for this Court to hold that as long as you can make the minimal showings of impracticability and materiality, which don't even require the evidence to be important or that the witness be uncooperative, you then can have any purpose you want. So you could have States, cities, local counties saying, well, every member of this gang or every member of this business must know some information about the person who has been detained. Alito, your argument is that the Constitution does not allow a material witness to be detained so long as the witness says in court that he or she will show up for the trial. No matter how much evidence there is that this person poses a great risk of flight, if the person says in court, I'll be there, that's the end of it. The person cannot be detained. Do I think the Constitution requires that? Yeah. I think it probably does, but we are not taking a position on that. I mean, what we are basically saying is that it is out of whack historically. It wasn't until the mid-1900s where that could happen, where even if they said they would come back, you could hold them. So I think it's out of whack historically, and there may be a real constitutional argument. We are not pressing that. We are simply saying that if it's used for its proper purpose, then we're going to assume its constitutionality, which the Ninth Circuit did, but it can't be that it can be used as a preventive detention. And I think any reasonable official, I want to go to the qualified immunity if I could, would have seen that, because I think the analysis would have been the following. You would have pulled out Dunaway, and you would have seen that you need probable cause to arrest someone, probable cause of wrongdoing. And you would have then said, well, we don't have probable cause of wrongdoing, so you would have pulled out Wren, then, because Wren talks about pretext. And what Wren would have told you is, do not conflate cases in which there's probable cause of wrongdoing with cases in which the Court has granted an exemption from the probable cause. You might turn out to be. Roberts. If you were writing a law review article, you might have done that. But we're talking about an officer. I think the first thing he would do is say, well, let me see these material witness statute cases, and what would he have found? Well, I think what he would have found, Your Honor, is that the Court has not specifically granted that it is not specifically ruled on the Fourth Amendment. But what he would have found in Barry and the other cases is that the Court repeatedly, repeatedly referred to the statute as a means of securing testimony. So I think the reasonable official would have said to themselves, well, it's clear under the Fourth Amendment that I don't have probable cause, but maybe the statute is allowing me to do it. Now, first of all, the statute can't authorize a Fourth Amendment violation. But putting that aside, just as a reasonable defense. Roberts. Right. But I think he reads the statute and then doesn't say, well, but maybe the statute is unconstitutional, so I need to do some more research. Exactly, Your Honor. And I think what the research would have done is they would have looked at Barry and all of this Court's other cases and would have specifically said it's to secure testimony. And then I think a reasonable official would have looked at the text of the statute. Everything in the text of the statute is about securing testimony, including the deposition requirement. You must be released if your deposition is taken. You must have a deposition. All of those things do not suggest, if the government's interest could be simply we want to hold this person because, for preventive detention reasons, none of the statute would make sense. I think that a reasonable official could not have turned to this statute and said, yes, I'm looking at the statute and it seems like I can use it for whatever reason I want. So the eight judges taking the opposite position and the hearing on Bonk Below were just being unreasonable. It would have been unreasonable for an officer making this determination to agree with eight judges from the Ninth Circuit. I think, Your Honor, Mr. Chief Justice, the only way I can answer that is to say this Court has never made a determination of whether there are dissents. I mean, take the Groh case in this Court. Two justices of this Court dissented on the merits, and yet you still found that the law was clearly established. What we said in Wilson, I'm quoting, judges — when judges disagree on a constitutional question, it is unfair to subject public employees to money damages for picking the losing side of the controversy. I mean, but I think Groh goes the other way. Ultimately, all I can say, Mr. Chief Justice, is I think that the fact that there were dissenters can't be dispositive, and ultimately this Court— Roberts. I agree with that, of course. But at the same time, it does seem like you're imposing a very heavy burden on the officers in this area when you do have a situation where eight judges, when they conduct their research, come out the other way. And that type of burden is particularly heavy when you're talking about if they guess wrong, comes out of their pocket. And if I'm the officer in that situation, I say, well, I'm just not going to run the risk of, you know, having to sell the house because I agreed with eight judges on the court of appeals. Well, Your Honor, I think, you know, of course, I'm not sure that it will actually come out of their pocket, but leaving that, I get your — the crux of your point. I do think ultimately, though, that this is a situation where a reasonable official would have had to say to themselves, I can use this as preventive detention act, because I want to be very clear about our position and how narrow it is. We would concede, for purposes of this argument, that if they wanted to use this for dual motives, then it would have been a real question. They would have said, look, we want the testimony, that's what the statute talks about, but we also hope that maybe something else will come out of it. That's a close question. But if they would have said to themselves, which is all we're saying this case is about, is, look, we don't want this testimony, and Justice Breyer's hypothetical, there's clear, objective evidence, we don't want to use this testimony, perhaps it's counterproductive in our case, we're not going to use this testimony, but we'd like to hold the person. I think that it's very difficult for a reasonable official to say to themselves, this statute grants me preventive detention powers. I mean, I think we would be looking at a statute going back to 1789 that this Court has repeatedly commented on that is only about testimony. You would be saying to yourself, this statute allows me to engage in preventive detention even though Congress has never passed a statute like that, Congress specifically rejected preventive detention powers. Alito, you don't think that an official reading all of this Court's cases saying that subjective motivation is not proper in determining the application of the Fourth Amendment would be able to think that this would apply here, too, subjective motivation doesn't count here, what counts is whether there's a – there are objective criteria that would permit the detention? I don't think so, Justice Alito, respectfully. I think when you pulled out Wren, which of course is this Court's, you know, landmark decision on pretext, Wren could not have been clear. The Court specifically said only an undiscerning reader would conflate the two. And I think that the conceptual point that Wren was making is straightforward. The Fourth Amendment says you need probable cause of a violation of the law to arrest someone. If the government wants to walk in and ask for an exemption from that standard and says the reason we want the exemption is because of the purpose of the arrest, then the Court in Wren said, well, then they must adhere to the purpose. Otherwise, it's simply an end run around the standard probable cause test. And consider two cases. Scalia, but the Fourth Amendment doesn't say you need probable cause. There are situations where you can conduct a search without probable cause. There's the Terry search, there's administrative searches, there's a lot of exceptions. Well, yes, Justice Scalia, but I think, well, the Terry – the Terry stops, I think, we put to one side, because as the Court in Terry said and as this Court has interpreted Terry, those were because those were not full-scale arrests. The administrative – sorry, Your Honor. Administrative searches, automobile searches, you know, you know. Absolutely. And those all fall into the special needs category, and those were cases you, Your Honor, in Wren distinguished as conceptually different than where there's probable cause of a violation of the law, because what you yourself said in Wren was, look, the government is asking for an exemption from the traditional Fourth Amendment standard, and they're saying the reason we want the exemption is because of the purpose of our search. What you said is, well, then of course we're going to hold the government to that purpose. They can't tell us, look, we don't want to meet the Fourth Amendment standard because of the purpose of what we're doing, but then turn around and not adhere to the purpose. And so if you had two cases, one where there's probable cause of wrongdoing and another case where there wasn't, the judge would say fine to the first one, and then he would say to you, well, the second one, you don't have probable cause. The only thing the government could say at that point was, well, that's true, but we're not trying to investigate or prosecute the person who hasn't done away. We have a different purpose. Maybe it's administrative, maybe it's a secure testimony, maybe it's a roadblock, maybe it's something else. And then if the Court said, well, fine, go ahead and do that search on less than probable cause, if that's your purpose, you couldn't turn around then and not adhere to that purpose. I mean, I think that's what we're talking about, is that it's not. Alito, the dual motive case would not violate the Fourth Amendment, or wouldn't necessarily violate the Fourth Amendment, isn't that right? And you think that a reasonable official would appreciate, well, it's okay for me to have a dual motive, but I have to stop and think, is my interest in investigating this individual further the but-for cause of my desire to get a material witness warrant? You think that was apparent? I think it actually is, Your Honor. And the reason is because I think it's a — I think it actually gives cushion to the reasonable official, because I think once you are saying we want a secure testimony, it might be very difficult, as the Chief Justice was pointing out, to say, well, how do I know if I could have ulterior motives or not? That may be a very difficult situation. But I think a reasonable official for this Court, the proposition that this Court would have to — would have to bless, based on the allegations here, are the official said, look, we think we can show materiality and practicability because Mr. Alkit's taking a trip, he's been cooperative, but he is taking a trip, and he worked for the same charity. We do not want the testimony. We can't use the testimony in this trial. The only reason we want to do it is to hold him, and we don't have probable cause of a violation of the law. I think any reasonable official would have understood that as preventive detention. And there may be — Kennedy I'm not sure why that just can't be resolved under the issue of materiality. The magistrate asks the prosecutor why he wants to do this, and he infers from what the prosecutor said, just what you say, and then it's not material. That's the end of the case. Verrilli, that goes to the crux of I think what's going on here. We have said that both the Fourth Amendment and the materiality, as well as other parts of the statute, would deal with it precisely. The government's opening brief throughout the lower courts said, no, it doesn't matter if you're going to use the testimony or not, or we have any intention. We posed that hypothetical in our brief. The government came back and said, well, maybe that could be done with materiality. If the government was going to stick to their position, their conceptual position, they would have come back and said, look, the objective components of materiality and impracticability have been satisfied because he's taking a trip and he worked for the same charity, and who cares whether. So if the Court is prepared to put a limit on, you have to use this for its stated purpose, testimony, that's all we're asking for. I mean, the case has changed now because of the concession that the government has made on pages, the bottom of 15, top of 16, where they are now saying, yes, that is a tough situation and maybe we can deal with that through the statute. That's all we're saying. The Ninth Circuit understood this as a sole motive case. The government understood it in their cert petition and in their brief to this Court as a sole motive case. We have said we think the analytical test is a but-for, but we're prepared to go with sole motive and our allegations, our factual allegations are consistent. And the proposition we are simply saying we don't believe this Court can bless is you satisfy materiality and impracticability in some minimal objective way, you don't care whether you're ever going to use the testimony, you may have no use for it, but it's an end-run around locking people up. Alitoso Where did you allege that the desire to detain was the sole motive for this? Clement Your Honor, I think the clearest allegations are 111, 112, and 154 of our complaint in the joint appendix. What we've said is it was not the secure testimony. And I think that the Ninth Circuit certainly understood it that way at pages, I apologize, 25A and 40A of the opinion. And then the government in its cert petition and its brief understood it that way in saying we don't know how the Ninth Circuit would deal with a mixed motive case, clearly suggesting that the Ninth Circuit was a sole motive case. And so, again, all we are saying is it cannot be that this statute could be transformed into a preventive detention statute, and I think particularly so because the government after 9-11 specifically, as the green briefs note, specifically asked Congress for a preventive detention power, and that power was denied. What they granted was a very limited 7-day hold only for noncitizens. And so I think what we're talking about in many respects, I think at a macro level, is a separation of powers case as much as a Fourth Amendment. And I think it's not dissimilar to the dialogue this Court has been having in the Guantanamo cases with, look, if you need to go beyond the Fourth Amendment, if you think you need such a fundamental change to our country's traditions, Congress is going to have to take the first step, we'll look at it, and there will be a back and forth. But here what happened was the preventive detention powers were denied, and yet the government still went ahead and used the material witness statute. And again, I can't stress enough that the government did not raise a Nickball claim as to the plausibility of these allegations. Only now in the reply brief where they're trying to address the sole motive situation or but-for, which is all we're asking this Court to address, the government has now said the allegations are implausible. I think that in many situations, you know, with the absolute immunity point, if I could just turn to that for a second, the history, as you said, Justice Kennedy, the government has conceded they don't have a case on their side. We have plenty of cases in which, as the historian's brief points out, and as our brief points out, in which there was not immunity for the arrest of a witness, which is very different than calling a witness, Justice Sotomayor. And what we are talking about here also is the government's burden. So I don't think that's something we could have waived, especially since the Ninth Circuit actually addressed it and put the government on notice that the government came forward with no historical evidence. And it's not inconsistent with warrants generally. As this Court made clear in Malley, it surveyed the history of arrest warrants and said, look, arrest warrants, there's no history of immunity. We're not going to grant absolute immunity for arrest warrants. In Burns, Justice Scalia pointed out there's no history with respect to search warrants. And I think the history with respect to material witness warrants is even clearer. So what we're talking about is no history. We're talking about a fairly ancillary and rarely used process to the criminal justice system. And we're talking about where there's sort of a unique confluence of factors, where you have someone who's not the defendant in the trial, who's a third party, and their liberty is being deprived. And it's the type of statute that can be abused. I mean, I think the government's whole point is it's a dual — it's a dual motive type statute. And so that because it can be inherently abused, there has to be some checks on it. And this Court has never said that you would have absolute immunity for all prosecutors in all cases. We are certainly not raising a motive case with respect to absolute immunity. What we are simply applying is the Court's test in absolute immunity, which is the functional approach. You have to make that threshold determination about whether something is investigative or not. And I think that's the teaching of Buckley. Take two witness interviews. They're the same act, but the prosecutor clearly can be engaged in interviews for different reasons. In Buckley, it happened to be on those facts the Court believed it was investigative based on the allegations in the complaint. But what if it were two days before the presentment to the grand jury? It's likely the prosecutor would have assumed he had probable cause at that point and was prepping the witnesses. Those are two acts, but you have to look behind them. I think there's no way around looking behind. The alternative, the flip side of what the government is asking, is rigidly categorize every single act a prosecutor may undertake in this country and say it's either wholly investigatory or wholly prosecutorial. And I think that's a very difficult test. I think there's no reason why district courts can't make an initial determination. I think here in particular, Judge Lodd was in a unique position to make the determination. He sat at the underlying trial of al-Hussein, so he knew what testimony and what was going on. Scalia, you're going way beyond what I thought you were. You're saying you always have to make that determination of good faith, right, in all cases, including when the prosecution is accused of bringing a prosecution purely for harassment purposes? No, Your Honor. And I, Justice Scalia, I apologize if my argument was going beyond that. I think what's going on here is that there's a unique set of factors with respect to material witness arrest, not the least of which is the history with respect to both material witness arrest and warrants generally. And I think there's been no counter-history by the government. I think back to the case of the Bivens case, under what theory is the history of the immunity at some point in the 19th century relevant to the scope of the immunity that should be available in a Bivens action? What's the theory for that? Well, Your Honor, I think you know, I don't know that I have an independent first principles theory. I think this Court has said repeatedly that you will keep the immunities coterminous and you will look to the history in both cases. So that's the Butts case. It doesn't make any sense. I can understand it with respect to 1983 on the theory that when Congress passed the predecessor of that statute, it implicitly intended to adopt the immunities that were available at the time. But when this Court invented the Bivens claim in when, 1971 or whatever, that the Court intended the Court was committed itself to recognizing only those immunities that were available at the time when 1983 was adopted. Well, I think, you know, part of what the Court's answer is, it's a practical concern that it's just too difficult to have different immunities. And the Court has repeatedly reaffirmed that. And I think from a policy standpoint, a practical standpoint, it's felt that that's the right analysis and that there has to be some way to tether the immunity analysis. And history is ultimately, I think, what the Court has said is that it's unnecessary, though not sufficient. And that once you sort of unmoor it from history, it becomes very difficult to keep the two. And so I think what we're talking about here is a statute that has enormous consequences. It's third parties who have been cooperative, even, who have done nothing wrong, that end up in jail. And to say that there's going to be absolute immunity is very dangerous. This Court has repeatedly said that the thumb has to be on the scale against absolute immunity. That's an extraordinary protection. I think if anywhere where there needs to not be complete insulation, it would be where you have third parties who are going to jail. The only other case, prosecutorial immunity case, that this Court has had where it was a third party and not the actual defendant was Mitchell, and the Court denied absolute immunity there. In all the other cases, some of which you've denied absolute immunity, some of which you've granted, it's been the defendant in the full judicial process. Here we are talking about third parties after 9-11 who repeatedly went to jail. I think the allegations are very clear that it's at least but for, we think, sole, but certainly far more than dual motive. People were held, half the people were held for more than 30 days, even though the statutory presumption is 10 days. Many people were held for months. They were arrested at gunpoint. They were not immunized. Half the people were never called to testify. It went on in cities all over the country, people being held under horrendous conditions for long periods of time, interrogated about their own activities. Roberts. Thank you, counsel. General, you have 10 minutes remaining. Thank you. This is a simple case. It's not about Guantanamo. It's not about separation of powers. It's about one simple thing. Should we allow damages actions against an attorney general of the United States and ultimately AUSAs for doing their job when they're alleged to have a bad motive? If I could start with the Chief Justice's point about the cost of these lawsuits in allowing them to proceed. My friend on the other side says, well, that this will be a small, rare case, an isolated example. But I don't think that's true. I think if you allow their motivation argument to pierce absolute immunity, you will have this in every case or near every case. 95 to 96 percent of Federal cases are resolved by plea agreements. So there isn't someone who's actually called at trial. You could allege it in any of those cases. And particularly when you lace onto that what my friend has said is a disturbing, quote, ''national pattern of abuse'' of the material witness statute, something with which we vigorously disagree. But if you could add the fact that someone wasn't called on in a trial to that national pattern, then you'll be having these damages actions quite a bit of the time. Now, he says don't worry. There will only be a few hundred of these lawsuits. Well, leaving apart the fact that that excludes immigration cases and excludes the State cases, as Justice Kennedy said, a few hundred lawsuits just at the Federal level filed against the Attorney General and potentially Ginsburg. There are some elements of this picture that are very disturbing, and we are talking about the Attorney General and the Attorney General's immunity. But there are allegations here that this man was kept awake, the light shining in his cell for 24 hours, kept without clothes. Now, that doesn't sound like the way one would treat someone whose testimony was. Is there a remedy that he has for that obvious mistreatment? Justice Ginsburg, with respect to that whole set of questions, conditions of confinement, that isn't before the Court right now. What is before the Court is exclusively Fourth Amendment concerns. Now, Mr. Alkid did sue other people, including the warden who was responsible for that, and I think that there have been other ancillary litigation with respect to that. But to hold either the Attorney General or prosecutors liable is something that would, I think, ultimately open the door to at least their few hundred lawsuits at the Federal level, if not more. Breyer, I'd like to go back to the statute. If an officer fills out an affidavit for a search and says there were drugs in the house, so I want to search it, and it turns out he was lying, you would have a damages action. The officer, you'd have a, you'd potentially have a damages action if the officer is not against the prosecutor. Breyer, no, no, I'm saying the officer, because he told the law. Yes. All right. Now, here it says that the person filing out the affidavit has to say he is a material witness. So suppose that the plaintiffs were to prove that the individual who signed that was not telling the truth in saying he is a material witness because, not just but there was no possibility he would call this individual, none. And that's what they have to prove. It's really very hard burden of proof. Now, one, would that interfere significantly with law enforcement? And two, how do you distinguish it from the drug case? Justice Breyer, I'm not sure if your hypothetical has it as the prosecutor  or the agent. If it is the agent, I don't think that is something as to which absolute immunity inheres. That's Malley v. Briggs and a whole line of cases. Qualified immunity, of course, would. And indeed, those claims are pending in this drug case as well. Breyer, but in the case of the agent, you're prepared to say that we will allow the plaintiff to go into his motive to the extent that the plaintiff can show there is no possibility he intended to call this individual. I think that at least for purposes of that, I would say that there's at least no absolute immunity prohibition against that. There may be irrelevant under other lines of authority. But with respect to my friend's point about your hypothetical in which he said that there, you know, the government isn't sticking to its position or something like that, I just want to be clear. Our position is for the Fourth Amendment, it doesn't look to subjective motivations at all. That's Wren and Brigham City and the like. But the statute in 3144 does have safeguards, prophylactic safeguards to guard against the type of abuse that I think several justices have mentioned today, so that you could only detain someone so long as their release wouldn't result in a failure of justice and the like. My friend also said that there's no historical precedent for this. I would urge the Court to look at the 1846 statute, which didn't require failure to comply before a witness was brought in on a material witness warrant and it didn't and it had sureties in it. And I don't think what the government is doing here is any different. And maybe I'll just make one final point, picking up on what Justice Alito said about the allegations in this very case, because I don't think if you look at the complaint that the allegations in this case prove either that the Attorney General or the line AUSA had a single motive, this is fleshed out at pages 17 to 19 of our reply brief, at best they are consistent with their newly minted standard, a dual motive standard. And given that, I think that the complaint would fall on their own terms, and indeed, that law, that line that they're proposing, a but-for causation line, would be extremely difficult to apply in practice and would ultimately lead the law to lawsuits filed against Attorneys General and line prosecutors alike. If there are no further questions? Thank you, General. The case is submitted.